UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIFER L. SABO,<br><br>                    Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security Administration,[1]<br><br>                    Respondent. | Case No. 1:15-cv-00547-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court for its consideration is the Petition for Review of Respondent's denial of Disability Insurance Benefits (DIB) and child's Supplemental Security Income (SSI) filed by Petitioner Jennifer L. Sabo on November 11, 2015. (Dkt. 2.) Pursuant to 28 U.S.C. § 636(c), the parties consented to the exercise of jurisdiction over this matter by the undersigned United States Magistrate Judge. (Dkt. 19.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

At the beginning of the administrative process for benefits, Jennifer Sabo was seventeen years of age. Due to her status as a minor, Sabo's mother, Kimberly Sabo, protectively filed an application for child insurance benefits based on disability on April 23, 2010. On October 18, 2011, Mrs. Sabo filed an application for both adult supplemental security income and childhood benefits for her daughter. In both applications, Sabo alleged disability beginning January 1, 1998, due to a learning disability and memory difficulties. Sabo's claims were denied initially and on reconsideration, and a hearing was held on November 19, 2013, in Orange, California before Administrative Law Judge (ALJ) Kyle E. Andeer. (AR 52.) After hearing testimony from Sabo, her mother, and a vocational expert, ALJ Andeer issued a decision finding Sabo not disabled on December 13, 2013. (AR 22.)

Sabo requested review by the Appeals Council, submitting additional evidence for consideration: evidence from the school district covering the period from 2004 through 2012; a 2015 neuropsychological evaluation; and physical medical evidence. (AR 7.) On September 15, 2015, the Appeals Council stated that it considered the additional evidence submitted by Sabo, [2] but found no reason under SSA rules to review the ALJ's decision,

---

[2] The Appeals Council received and considered several exhibits that the ALJ did not have at the time the ALJ rendered his written determination. (AR 5-6.) The exhibits were made part of the administrative record, with the exception of medical records from Orange Advanced Imaging dated May 12, 2015, which the Appeals Council determined were about a later time considering the ALJ decided Petitioner's case through December 13, 2013. (AR 2.)

**MEMORANDUM DECISION AND ORDER - 2**

making the ALJ's decision the final decision of the Commissioner. (AR 1.) Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Sabo was born on December 6, 1993, and was nineteen years of age at the time of the November 19, 2013 hearing. Sabo is currently twenty-three years of age, has no past relevant work experience, and graduated from high school in June of 2012.

Sabo's medical record is sparse; rather, her condition is documented through school progress reports and scores from standardized tests. Sabo was home schooled or in a combined home school/public school program from the third grade through high school graduation. According to school records, prior to beginning her home school program, Sabo's academic performance was approximately two years below grade level and she scored average to low-average on standardized achievement tests.

On November 5, 2010, school psychologist Desiree Sanchez performed an assessment as required by law under the Individuals with Disabilities Education Act to determine whether Sabo was eligible to continue to receive special education services. (AR 218.)  At the time, Sabo was in the eleventh grade and just shy of her seventeenth birthday. Sanchez noted Sabo "historically evidenced a deficit in long term memory which has an adverse impact on her basic reading skills, spelling, written expression, and math skills." (*Id.*) She noted Sabo was "making steady academic gains," and referenced

**MEMORANDUM DECISION AND ORDER - 3**

Sabo's progress report, which indicated Sabo was earning A's and B's in her classes,[3] and had a 3.04 G.P.A. (*Id.*)

Sanchez administered several psychological tests, including the Woodcock Johnson III test, which measured cognitive abilities. Sabo scored in the low average to delayed range for the following tests: verbal ability (85); thinking ability (83); cognitive efficiency (73); and working memory (62). (AR 222.) Sabo's overall intellectual ability was in the low range, and her average score placed her in the 5th percentile when compared with students her age. (AR 222.) Sabo's test scores translated to the following grade equivalencies: 6.2 in basic reading skills and grade 6.2 in broad math.[4] (AR 408.) Sanchez concluded Sabo's performance on the tests indicated a deficit in the area of short term and working memory that would have an adverse impact on her educational performance, and that Sabo was benefitting from her current educational program and placement. (AR 226.) Sabo therefore qualified for continued placement in special education classes. (*Id.*)

On January 12, 2012, Charlene K. Krieg, Ph.D., evaluated Sabo at the request of the Department of Social Services to assess Sabo's eligibility for disability benefits. (AR 450.) At the time, Sabo was a senior in high school and eighteen years of age. Dr. Krieg administered several psychological and intelligence tests. On the Wechsler Adult Intelligence Scale (WAIS-IV), Dr. Krieg assessed a full scale IQ of 82 (low average),

---

[3] Sabo was earning an A in Practical Language Arts; A+ in 3D Art Elective; A+ as a teacher's aide; A+ in Practical Life Science; B+ in ROP Law Enforcement; and A- in U.S. History. (AR. 218.) These classes, with the exception of the art elective, were special education courses.

[4] Other than this report, the administrative record contains no other reports from Sanchez.

**MEMORANDUM DECISION AND ORDER - 4**

verbal comprehension of 89 (low average), perceptual reasoning of 81 (low average), working memory of 95 (average), and processing speed of 81 (low average). (AR 453.) On the Wechsler Memory Scale (WMS-IV), Sabo scored in the "borderline range" for auditory immediate memory and immediate memory. Sabo scored in the "low-average range" in visual immediate memory and working memory. (*Id.*)

Dr. Krieg opined there was no evidence of any disorder on mental status examination, and that Sabo's "current level of intellectual functioning [was] in the low-average range." (AR 453-54.) Dr. Krieg opined Sabo was capable of understanding clear instructions, following simple directions, and completing tasks. She indicated Sabo was capable of sustaining performance on detailed and complex tasks and that she appeared to be able to accept instructions from supervisors and interact with coworkers and the public. Dr. Krieg stated that there was "no mental impairment that would limit [Sabo's] ability to engage in work activities and complete a normal workday or workweek.

During the 11th grade, Sabo injured her left knee walking across the street. (AR 68.) At the hearing, Sabo complained of some difficulty with her ankle and recurrent torn fascia, and testified she could not stand for longer than fifteen minutes before she needed to sit down. (AR 68-69.) At the time of the hearing, there was no medical evidence in the record related to this injury, as Sabo was still in the process of having her condition evaluated.

## SEQUENTIAL PROCESSES

Born on December 6, 1993, Sabo was a 17-year-old high school student at the time her mother protectively filed for disability benefits on her behalf. Because Sabo had not reached 18 years of age by the alleged onset date, the ALJ assessed Sabo's disability using both the child and adult standard of review.

**I.     Childhood**

For child disability benefits, the Social Security Administration established a three-step sequential process to determine whether the minor claimant is disabled. 20 C.F.R. 416.924(a). The first step of the test, which is similar to the familiar five-step process utilized in adult disability cases, requires the ALJ to determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R. 416.924(b). If so, "then both statutorily and by regulation the child is ineligible for SSI benefits." *New ex rel. JNJ v. Colvin*, 31 F. Supp. 3d 1120, 1124 (E.D. Wash. 2014); 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b). Here, the ALJ found Sabo had not engaged in substantial gainful activity (there was no evidence she had ever worked) since the date the application was filed. (AR 28.)

If the ALJ determines the claimant has not engaged in substantial gainful activity, then he must determine, at step two, whether the claimant suffers from a medically determinable severe impairment or a combination of impairments that is severe. 20 C.F.R. 416.924(c). If the ALJ determines the claimant does not have a medically determinable impairment, or that her impairment is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, then the

**MEMORANDUM DECISION AND ORDER - 6**

claimant is not disabled, and thus, not entitled to benefits. *Id.* The ALJ found Sabo's learning disability and memory problems were not severe medically determinable impairments, nor constituted a combination of impairments that was severe. (AR 28-29.) Because the ALJ did not find a severe impairment or combination of impairments that was severe at step-two, he found Sabo not disabled.[5] (*Id.*)

## II. Adult

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Sabo had not engaged in substantial gainful activity since her alleged onset date, January 1, 1998. (AR 32.)

At step two, it must be determined whether the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of 12 months, then she is not disabled, and the ALJ need not consider her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(ii) and (c). The ALJ found Sabo's learning disability and memory problems were not severe within the meaning of the regulations. Because she did not have a severe impairment or combination of impairments that was severe at step-two, the ALJ concluded Sabo was not

---

[5] At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals a listing. 20 C.F.R. 416.924(d). If a claimant has an impairment or combination of impairments that meets, medically equals or functionally equals a listing, and the impairment has lasted or is expected to last for a continuous period of at least 12 months, she is presumed to be disabled. *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

disabled as defined by the Social Security Act.[6]

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

---

[6] Step three asks whether a claimant's impairments meet or equal a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's RFC, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible. If a claimant does not retain the ability to perform her past relevant work, the ALJ proceeds to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

**MEMORANDUM DECISION AND ORDER - 8**

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be

**MEMORANDUM DECISION AND ORDER - 9**

upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Sabo contends the ALJ erred at step two, because he concluded that, prior to and after her 18th birthday, she did not suffer from any medically determinable severe impairment. Sabo requests also for the Court to consider an additional medical record that is not included in the administrative record. The Court will first address the requested consideration of the additional medical record before addressing the alleged errors at step two.

### I.     Additional Medical Records

Sabo requests the Court to consider a ten-page genetics report, dated October 8, 2013. (Dkt. 23-1.) Pages 3-4 of the ten page genetics report were provided to the Appeals Council for review. Therefore, only those pages became part of the administrative record.[7] (AR 536-538.) Sabo argues it is proper for the Court to consider the genetics report in its complete form. The Commissioner objects to the Court's consideration of the complete report and seeks to strike the additional seven pages not included in the administrative record.

Review under 42 U.S.C. § 405(g) is based upon the certified copy of the transcript of record and the pleadings. 42 U.S.C. § 405(g). Section 405(g) provides in part:

---

[7] Sabo does not contend the additional evidence that was included in the record warrants remand for further consideration by the Commissioner.

**MEMORANDUM DECISION AND ORDER - 10**

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both ....

The Court is not permitted to consider any evidence outside the administrative record—in this case, the complete genetics report. Petitioner fails to articulate good cause for the incomplete submission of the report to the Appeals Council, arguing only that Petitioner's mother was ill equipped to represent her daughter before the Appeals Council. However, Petitioner's mother was able to correctly submit several other records, and fails to explain why the complete genetics report was not submitted as well.

Accordingly, the Court will deny Sabo's request.

## II.   Step Two Errors

Sabo argues the ALJ erred twice at step two. First, she contends the ALJ's rejection of the 2010 Woodcock Johnson III (WCJ III) test results in favor of the 2012 Wechsler Adult Intelligence Scale (WAIS-IV) test results was not supported by specific and legitimate reasons. Second, Sabo argues the ALJ's conclusion, that she did not have a medically determinable impairment both before and after her 18th birthday, is not supported by substantial evidence.

"To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of 'signs—the results of medically acceptable clinical diagnostic techniques, such as tests—as well as symptoms,' a claimant's own perception or description of his physical or mental impairment." *Shaw v. Colvin*, No.

**MEMORANDUM DECISION AND ORDER - 11**

C13-917-RSM, 2014 WL 1588623, at *4 (W.D. Wash. Apr. 18, 2014) (citing *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir.2005)). The step two inquiry is the "de minimus screening device to dispose of groundless claims." *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987). "Step two impairments may not be found severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (emphasis in original). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85–28, available at 1985 WL 56856, *3.

Additionally, because Sabo claims a mental impairment,[8] the ALJ was required to make use of the "special psychiatric review technique." 20 C.F.R. § 404.1520a. Specifically, the ALJ must determine whether Petitioner had a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. *Id*. § 1520a (b) & (c). The psychiatric review technique form ("PRTF") is typically used to comply with the regulation. *Gutierrez v. Apfel*, 199 F.3d 1048, 1050 (9th Cir. 2000).

---

[8] A mental impairment is "a disorder characterized by the display of an intellectual defect, as manifested by diminished cognitive, interpersonal, social, and vocational effectiveness and quantitatively evaluated by psychological examination and assessment." Mental impairment, STEDMANS MEDICAL DICTIONARY 437900.

**MEMORANDUM DECISION AND ORDER - 12**

Here, the ALJ committed clear error by failing to engage in the required step two analysis. Rather than reviewing the test results themselves to determine whether Petitioner had a severe, medically determinable mental impairment at step two, the ALJ sought to discredit the results of Dr. Sanchez's report because she was a "school psychologist." The ALJ improperly engaged in an analysis typically reserved for step four, when the ALJ must assess Petitioner's credibility and weigh the opinions of treating, examining, or non-examining physicians to arrive at a conclusion regarding disability.

Additionally, substantial evidence does not support the ALJ's conclusion that Petitioner did not have a medically determinable severe mental impairment. The ALJ concluded that Dr. Kreig's 2012 evaluation, in contrast with Dr. Sanchez's evaluation, did not show significant memory problems, and showed no psychological impairment. However, upon review of the test results as a whole, Dr. Kreig's 2012 WAIS-IV evaluation results are substantially similar to Dr. Sanchez's 2010 WCJ III test results.

Dr. Kreig's test results indicated Petitioner scored in the low-average range for verbal comprehension, perceptual reasoning, processing speed, and full scale I.Q. Petitioner's percentile ranking in each of those areas was 23, 10, 10, and 12, respectively.[9] With regard to working memory, Petitioner was average, with a percentile ranking of 37.

---

[9] The percentile ranking is an indicator of the number of persons who score at or below this level. Thus, if Petitioner was in the 5th percentile, that would place her as performing better than 5 out of 100 others her age.

**MEMORANDUM DECISION AND ORDER - 13**

Dr. Sanchez's test results showed similar scores. For instance, Petitioner's verbal comprehension score on the Woodcock Johnson test was 76, in the 5th percentile rank; her verbal comprehension score was 85, in the 16th percentile rank; her thinking ability score was 83, in the 12th percentile rank; her cognitive efficiency score was 73, in the 4th percentile rank; and her working memory score was 62, in the 1st percentile rank. Both Dr. Sanchez and Dr. Krieg's test results indicated Petitioner's overall intellectual ability was in the low or low-average range. Thus, other than Petitioner's working memory score, which showed some improvement on the WAIS-IV test, the test results were substantially the same with regard to Petitioner's cognitive abilities. Both tests indicated an impairment that was severe, especially considering Petitioner qualified for special education throughout her childhood years. *See Nicholson v. Colvin*, 106 F.Supp. 3d 1190, 1195 (D. Ore. 2015) (finding learning disabilities reflected on cognitive tests results severe at step two).

Furthermore, the Court is perplexed about why the ALJ believed the severity analysis should be bifurcated, and considered separately for Sabo as a child and for Sabo as an adult. Nothing in the regulations indicates the standard for determining severity is different when considering a child's application for disability benefits than when considering an adult's application for disability benefits. *See Fontanez ex. Rel. Fontanez v. Barnhart*, 195 F.Supp.2d 1333, 1348 n.9 (M.D. Fla. 2002) (explaining three step analysis for childhood disability determination).

**MEMORANDUM DECISION AND ORDER - 14**

Omissions at step two are harmless error if step two is decided in a petitioner's favor. *Nicholson*, 106 F.Supp. at 1195. However, the ALJ's error here was not harmless, because the ALJ failed to proceed to later steps of the sequential evaluation process.[10]

The ALJ misapplied the law at step two, and substantial evidence did not support the ALJ's conclusion at step two that Petitioner did not have a severe medically determinable impairment. Accordingly, the Court will remand this matter for additional proceedings.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: March 28, 2017

Honorable Candy W. Dale
United States Magistrate Judge

---

[10] While the ALJ may ultimately reach the same conclusion of not disabled, that is not for the Court to decide. *Lee v. Colvin*, 27 F.Supp.3d 972, 975 (S.D. Iowa 2014) (reviewing court does not consider a claim de novo).

**MEMORANDUM DECISION AND ORDER - 15**